IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DC TRANSCO, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:24-CV-1260-RP |
| RAINBOW ENERGY MARKETING CORPORATION, | § § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant Rainbow Energy Marketing Corporation's ("Rainbow") motion to dismiss Plaintiff DC Transco, LLC's ("DC Transco") claim for attorney's fees in its complaint, (Dkt. 1). (Mot. Dismiss, Dkt. 11). DC Transco filed a response in opposition, (Dkt. 19), and Rainbow filed a reply in support, (Dkt. 20). Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion.

**I. BACKGROUND**

This case is the second iteration of an almost duplicate breach of contract case that was filed in this Court in 2013. *Rainbow Energy Marketing Corporation v. DC Transco, LLC*, No. 1:21-cv-313-RP (W.D. Tex. 2013) ("*Rainbow I*"). In *Rainbow I*, this Court awarded judgment for DC Transco on its counterclaims. (*Rainbow I*, Dkt. 226). On appeal, the Fifth Circuit remanded the case because DC Transco had not been able to establish that every member of DC Transco's limited liability company was not a citizen of Rainbow's home state of North Dakota. (*Rainbow I*, Dkt. 246). DC Transco reorganized, curing the jurisdiction defect, and filed the instant case ("*Rainbow II*"). (Dkt 1; *see* Resp., Dkt. 19, at 1). In the new lawsuit, DC Transco is the plaintiff asserting its former counterclaims as claims against Rainbow, which is now the defendant. Otherwise, the substance of the allegations and claims between *Rainbow I* and *Rainbow II* remains the same.

1

The dispute between the parties dates back to February 2021, when Winter Storm Uri (also known as "snowmageddon" and "snowpocalypse") hit Texas. (Dkt. 1, at 2). At the time, Rainbow was a power marketer that bought and sold power and entered into hedges for itself and others, including DC Transco. (*Id.*). DC Transco had the right to sell electricity into the Texas electric grid through an interconnection called the East DC Tie. (*Id.*). The parties entered into an agreement to govern their business dealings called the Energy Management Agreement ("EMA"). (*Id.*). Under the EMA, Rainbow served as energy manager for DC Transco, providing risk management services among others. (*Id.*). In that capacity, Rainbow conducted some of its third-party energy transactions for DC Transco's account. (*Id.*).

According to the complaint:

> [A] transaction between Rainbow and a third party is for DC Transco's account only if there is a corresponding transaction between Rainbow and DC Transco. If there is, then Rainbow's third-party transaction becomes, under the Agreement's parlance, a "Back-to-Back Contract" that Rainbow then credits or charges to DC Transco. Without a transaction between Rainbow and DC Transco, Rainbow's transaction with a third party is for its own account or a client other than DC Transco.

(*Id.*).

Under the EMA, DC Transco approved transactions, although DC Transco delegated its approval right for certain transactions. (*Id.*). The EMA lists two categories of corresponding transactions between Rainbow and DC Transco:

> A "Commodity Transaction" is for the sale of physical electrical power. Anything else, including a futures or hedging transaction, is called an "Other Transaction." Under the [EMA], DC Transco's approval is required for both types of Transactions, although DC Transco can and does delegate its approval right under certain guidelines for some Commodity Transactions.

(*Id.*).

During Winter Storm Uri, Rainbow entered into futures transactions with third parties. (*Id.*). DC Transco did not approve the Other Transactions that corresponded with those futures transactions. (*Id.* at 2–3). The transactions did not pan out and lost more than $20 million. (*Id.* at 2).

2

DC Transco alleges the futures transactions were not Back-to-Back Contracts that Rainbow could charge to DC Transco. (*Id.* at 3). But Rainbow did charge DC Transco, and DC Transco now seeks to recover the $20 million charge. (*Id.*).

Relevant to this motion, in the new complaint, DC Transco seeks attorney's fees under the EMA and Chapter 38 of the Texas Civil Practice and Remedies Code. (*Id.* at 19). Rainbow moves to dismiss DC Transco's claim for attorney's fees for failure to state a claim under Rule 12(b)(6). (Dkt. 11). In its response, DC Transco "withdraws the Texas Civil Practice and Remedies Code as a basis for its recovery of attorneys' fees here," (Resp., Dkt. 19, at 2), leaving only DC Transco's request for attorney's fees under the EMA in dispute.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

3

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

New York[1] follows the American Rule for allocating attorney's fees, meaning that each party in a lawsuit is responsible for paying its own attorney's fees regardless of the outcome of the case unless an agreement between the parties permits the parties to recover attorney's fees from each other in the event they sue each other. In its motion to dismiss, Rainbow argues that the EMA contains no provision under which DC Transco could obtain attorney's fees whereas DC Transco contends the EMA does provide a basis for it to collect attorney's fees. The parties' dispute centers on specific provisions of Article IV of the EMA.

Subsection 4.4(a) of the EMA enumerates activities in which Rainbow is not authorized to engage, including the following, in relevant part:

---

[1] The parties selected New York law in the EMA to apply to govern disputes. Both parties rely on New York law in making their arguments in their briefing, and no party objects to the application of New York law.

4

> (i) pledge the credit of [DC Transco] in any way in respect of any agreements entered into between Energy Manager and any Third Party;
>
> (ii) with respect to the Facility or the Services provided hereunder, violate any material Permits or Applicable Law;
>
> (iii) sell or otherwise transfer any assets of [DC Transco], or cause any liens or encumbrances on the Facility or any other assets of [DC Transco];
>
> (iv) make any representation or warranty to a Third Party relating to [DC Transco];
> (v) settle, compromise (including agreeing to any penalty for any violation of any Applicable Law or Permit), assign, pledge, transfer, release or consent to the compromise, assignment, pledge, transfer or release of, any claim, suit, debt, demand or judgment against or due by [DC Transco], or submit any such claim, dispute or controversy to arbitration or judicial process, or stipulate in respect thereof to a judgment, or consent to do the same; or
>
> (vi) engage in any transaction on behalf of [DC Transco] not permitted under this Agreement.

(EMA, Dkt. 21-1, at 23).

Subsection 4.4(b) then provides: "[DC Transco] shall not have any liability with respect to any transactions executed by [Rainbow] in breach of subparagraph (a) above, and [Rainbow] shall indemnify and hold harmless Project Indemnified Parties from any Claims or Losses arising in connection with such transactions." (*Id.*). DC Transco posits the phrase "arising in connection with" as used in Subsection 4.4(b) is "intentionally broad, covering Claims and Losses 'having their origin or genesis in' Rainbow's improper conduct." (Resp., Dkt. 19, at 3). DC Transco then looks to the EMA's definitions of Claims and Losses and describes them as "all-encompassing." (*Id.*). Claims are defined as "[A]ll suits, actions, liabilities, legal proceedings, claims, demands, loss, costs and expenses of whatsoever kind of character, including reasonable attorneys' fees and expenses." (EMA, Dkt. 21-1, at 10, 38). Losses are defined as "[A]ny and all judgments, losses, liabilities, amounts paid in settlement, damages, fines, penalties, deficiencies, costs, charges, taxes, obligations, demands, fees, interest, losses and expenses (including court costs and reasonable fees of attorneys, accountants and other experts). (*Id.* at 14).

5

According to DC Transco, this lawsuit will show that Rainbow's conduct was not authorized under Subsection 4.4(a), and Subsection 4.4(b) means that Rainbow must cover DC Transco's claims or losses in connection with those unauthorized transactions, including attorney's fees. (Resp., Dkt. 19, at 3–4). Rainbow disagrees and contends that, under New York law, the indemnification provision is applicable to third-party claims and does not apply to claims between the contracting parties. (Mot. Dismiss, Dkt. 11, at 2).

Under New York law, recovery of attorney's fees beyond those allowed by statute can occur only when the agreement contains "unmistakably clear" language reflecting the parties' intent to indemnify each other. *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989). In this case, the EMA's indemnification provisions are not unmistakably clear that the parties intended to indemnify each other in addition to third parties. DC Transco tries to avoid the *Hooper* rule by emphasizing that the EMA indemnification provisions are broad. But even broad indemnification clauses are not enough. In *Hooper*, the agreement at issue was a "typical, broadly worded indemnity provision," *Sage Sys., Inc. v. Liss*, 39 N.Y.3d 27, 32 (2022), and the court still focused on whether the agreement contained language that "clearly permit[ed] plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant." *Hooper*, 74 N.Y.2d at 492. Likewise here, even assuming the indemnification provisions are broad, the EMA does not explicitly say that DC Transco can recover attorney's fees from Rainbow as part of the indemnification structure.

DC Transco also points out that a different article in the EMA, Article 11, specifically addresses the mechanics of third-party indemnification and asks the Court to read Article 11 and Subsection 4.4(b) together to mean that Subsection 4.4(b) covers indemnification between the parties. That interpretation is not only a stretch but also does not cure DC Transco's problem that the EMA simply does not convey a right to recover attorney's fees to the parties in claims made between them. *See Hooper*, 74 N.Y.2d at 492 ("Inasmuch as a promise by one party to a contract to

6

indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise."). Following New York law, the Court is not permitted to infer indemnification between the parties as proposed by DC Transco. Under the EMA, DC Transco has no right to recover attorney's fees in a lawsuit against Rainbow, and DC Transco has failed to state a claim to those fees.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Rainbow's motion to dismiss, (Dkt. 11), is **GRANTED**.

**SIGNED** on September 15, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE